***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Rideout and the briefs and arguments before the Full Commission. The appealing party has shown good grounds to reconsider the evidence, and upon reconsideration, the Full Commission modifies the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matter of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as: *Page 2 
 STIPULATIONS
1. All parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction over the parties and the subject matter.
2. All parties have been correctly designated and there is no question as to misjoinder or nonjoinder of parties.
3. The parties were subject to the Workers' Compensation Act at the time of the alleged injury. 4. An employer/employee relationship existed between the parties at the time of the alleged injury.
5. The carrier on the risk is Insurance Company of the State of Pennsylvania, administered by F.A. Richard Associates.
6. On May 15, 2006, plaintiff sustained an admittedly compensable injury by accident when he was involved in a motor vehicle accident. Plaintiff sustained an injury to his back.
7. Plaintiff was paid the entire day of the alleged injury.
8. Plaintiff was employed with defendant until May 24, 2006.
9. Plaintiff's average weekly wage will be determined by wage information consisting of a check register from defendants.
10. The only issue before the Full Commission is whether plaintiff's termination on May 24, 2006 was causally related to his injury by accident of May 15, 2006. Issues before the Deputy Commissioner but withdrawn at the Full Commission were whether plaintiff suffered any wage reduction after May 30, 2006 as a result of his injury by accident and what, if any, additional medical treatment or compensation was due plaintiff. At the arguments before the *Page 3 
Full Commission, the parties stipulated that after plaintiff's surgery defendants began paying plaintiff temporary total disability compensation.
 ***********
Based upon the competent evidence of record herein, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the Deputy Commissioner's hearing, plaintiff was 49 years old. He worked for defendant-employer as an over-the-road tractor trailer driver. Plaintiff's job duties were to pick up boxed goods from customers and distribution centers and make deliveries to customers throughout the east coast.
2. Prior to the compensable injury by accident, plaintiff was involved in more than one automobile accident, most recently on May 14, 2005. Following that automobile accident, plaintiff reported problems with his neck and side, and was receiving treatment for the May 14, 2005 automobile accident at the time of the Deputy Commissioner's hearing. 3. On May 15, 2006, plaintiff was en route to Carlisle, Pennsylvania to deliver a load. He stopped at a truck stop to rest and was in bed asleep when his truck started shaking. Plaintiff got out of bed to unzip the cab curtain, struck his head and side, and fell to the floor. Once the curtain was unzipped, plaintiff saw another truck on the front of his truck's bumper. Plaintiff blew his truck's horn to stop the other driver from continuing to try to move forward into his truck.
4. The Middlesex Township Police Department responded to the accident. No party was injured and neither vehicle had to be removed from the scene. Plaintiff's truck sustained moderate damage to the front bumper and the other truck sustained minor damage. Plaintiff *Page 4 
reported the accident to his dispatcher stating that he had hurt his neck, and he was instructed to let his dispatch manager, Trampus, know the next morning.
5. On May 16, 2006, plaintiff continued the drive to Hazeltown, Pennsylvania. After completing the load, plaintiff drove to Brandyville, Pennsylvania to pick up a water load. Following his pick up, plaintiff started driving towards Lousiville, Kentucky. En route, plaintiff encountered construction and a bump in the road, causing his neck to snap, sending a sharp pain throughout his body. Plaintiff pulled to the side of the road and called Trampus to let him know his neck was worse. Trampus told plaintiff that he would have someone pick up plaintiff's load so that he could go to the doctor.
6. Plaintiff went to the Carlisle Regional Medical Center emergency room where he was diagnosed with a cervical strain. An X-ray of the cervical spine revealed cervical spondylosis and was negative for fracture. Plaintiff was discharged from the hospital and was placed on Percocet and Flexeril with instructions to rest for two days and no driving.
7. Later that day, Trampus dispatched plaintiff from Carlisle to Aberdeen, Maryland, so that he could pick up a load that was heading toward home. On plaintiff's way to Aberdeen, Trampus told plaintiff that the load was canceled, but that he had a load for plaintiff the following day near Petersburg, Virginia. On May 17, 2006, plaintiff drove around Richmond, Virginia en route to Petersburg, and again encountered road construction that caused his neck pain to increase. Plaintiff pulled to the side of the road and notified the dispatcher that he was going to his house because his neck was hurting. The dispatcher acknowledged plaintiff. Plaintiff then dropped his trailer in Fairfax, Virginia and bobtailed home to Fayetteville, North Carolina. *Page 5 
8. Upon returning home, plaintiff presented to Dr. Roberta Clemmons at Nelson Nelson Chiropractic Clinic on May 18, 2006, since he sought treatment there after prior automobile accidents. Later that day, plaintiff spoke with Trampus about his medical treatment and faxed him a doctor's note. Dr. Clemmons wrote plaintiff out of work from May 18, 2006 until May 30, 2006.
9. On May 30, 2006, plaintiff presented to the Fayetteville Veterans Administration Medical Center where he was placed on light duty restrictions of no truck driving until his treatment was complete. An MRI performed on May 30, 2006 revealed anterior degenerative change in plaintiff's cervical spine with no significant interval change from plaintiff's last MRI on January 17, 2006.
10. A few days later, plaintiff spoke with Mr. Hingus, defendant-employer's safety manager. Mr. Hingus told plaintiff that until he received a doctor's note from somewhere other than the Veterans Administration Medical Center, he would not file a workers' compensation claim for plaintiff's injury. Sometime later, another manager called plaintiff, alleging that plaintiff was not dispatched in the direction he was traveling. Plaintiff informed the manager that he was dispatched towards his home and that he informed the dispatcher when he could not continue his route due to his neck pain. Initially, plaintiff was not informed that he was terminated, but later learned that he was terminated on May 26, 2006. Defendants did not prove that plaintiff's termination was for misconduct or fault unrelated to his compensable injury for which a non-disabled employee would ordinarily have been terminated by defendant-employer.
11. After plaintiff's employment was terminated, he received unemployment for approximately eight weeks in the amount of $1,800.00. Plaintiff then worked in various jobs beginning in July 2006, including work at Café Risqué for five days, earning approximately *Page 6 
$500.00, and a painting job, earning approximately $320.00 for a few days work. In August 2006, plaintiff worked at Industrial Vac for four days, earning approximately $110.00, and Wendy's, earning about $380.00 per week for three weeks. Plaintiff was never completely taken out of work after May 30, 2006. In October 2006, plaintiff returned to work as an over-the-road tractor trailer driver for Western Express earning a greater average weekly wage than he earned with defendant-employer.
12. Plaintiff continued to receive physical therapy and medications at the Veterans Administration Medical Center. In July 2006, plaintiff was referred to Dr. Dennis A. Turner, a board certified neurosurgeon, for complaint of weakness and numbness in his bilateral upper extremities. Dr. Turner diagnosed plaintiff with pre-existing cervical arthritis, which can cause a secondary compression of the spinal cord. Dr. Turner recommended surgery and, on May 3, 2007, plaintiff underwent a cervical posterior decompression and fusion. On June 27, 2007, Dr. Turner saw plaintiff and felt he had improved considerably, although plaintiff continued to have low back symptoms.
13. At his deposition, Dr. Turner stated that plaintiff had pre-existing cervical arthritis, but that due to the injury he sustained on May 15, 2006, it probably caused a spinal cord injury. Dr. Turner testified to a reasonable degree of medical certainty and the Commission finds as fact that the May 15, 2006 accident exacerbated plaintiff's pre-existing neck problems. He stated that it is very common for patients with severe cervical stenosis to have even a mild injury that can bring about new spinal cord symptoms. Dr. Turner testified that he expected plaintiff would reach maximum medical improvement at the end of 2007.
14. On June 18, 2006, plaintiff saw Dr. Clemmons for headaches, neck pain, numbness in his fingers, dizziness and left trap pain. Dr. Clemmons recommended a six-week *Page 7 
treatment plan for plaintiff consisting of physical modalities and chiropractic manipulations. Plaintiff complained of prior low back pain, but not prior neck pain. At her deposition, Dr. Clemmons testified and the Commission finds that plaintiff's May 15, 2006 injury caused the problems in his neck for which she treated him.
15. Based on the greater weight of the medical evidence, the Full Commission finds that plaintiff's May 15, 2006 accident exacerbated his preexisting cervical problems, necessitating his need for surgery on May 3, 2007.
16. The only evidence concerning the circumstances of plaintiff's termination presented by defendants was in defendants' answers to interrogatories. The Commission gives greater weight to the testimony of plaintiff concerning his actions after the compensable injury occurred and finds that his termination was not for misconduct or fault unrelated to his compensable injury for which a non-disabled employee would ordinarily have been terminated by defendant-employer.
17. As the result of the compensable injury by accident, plaintiff was disabled from any employment from May 16, 2006 through May 30, 2006.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On May 15, 2006, plaintiff sustained a compensable injury by accident to his back arising out of and in the course of his employment with defendant-employer, resulting in a cervical strain. N.C. Gen. Stat. § 97-2(6). *Page 8 
2. As a result of the May 15, 2006 injury by accident, plaintiff was disabled from any employment until May 30, 2006. Plaintiff is entitled to total disability compensation at a rate of $423.21 per week from May 16, 2006 through May 30, 2006. N.C. Gen. Stat. § 97-29.
3. In order to meet the burden of proving continuing disability, plaintiff must prove that he was incapable of earning pre-injury wages in either the same or in any other employment and that the incapacity to earn pre-injury wages was caused by plaintiff's injury. Hilliard v. ApexCabinet Co., 305 N.C. 593, 290 S.E.2d 682 (1982). 4. An employee may meet the initial burden of production by producing one of the following: (1) medical evidence that he is physically or mentally, as a result of the work-related injury, incapable of work in any employment; (2) evidence that he is capable of some work, but that he has, after a reasonable effort, been unsuccessful in his efforts to obtain employment; (3) evidence that he is capable of some work, but that it would be futile because of preexisting conditions, such as age, inexperience, or lack of education, to seek employment; or (4) evidence that he has obtained other employment at wages less than his pre-injury wages. Demery v. Perdue Farms, Inc., 143 N.C. App. 259, 545 S.E.2d 485
(2001); Russell v. Lowes Product Distribution, 108 N.C. App. 762,425 S.E.2d 454 (1993). When a plaintiff meets his burden of showing disability, the burden then shifts to defendants to produce evidence that suitable jobs are available for the employee and that the employee is capable of obtaining a suitable job, taking into account both physical and vocational limitations. Demery v. Perdue Farms, Inc.,supra.
5. In this case, plaintiff proved that he was disabled until May 30, 2006. However, plaintiff has failed to prove that any wage reduction after May 30, 2006 was as a result of his injury by accident. N.C. Gen. Stat. § 97-29. *Page 9 
6. On May 26, 2006, plaintiff was terminated by defendant-employer. Defendant has the burden of proving that the employee was terminated for misconduct for which a non-disabled employee would also have been terminated and that the termination was unrelated to the employee's compensable injury. McRae v. Toastmaster, Inc., 358 N.C. 488,597 S.E.2d 695 (2004); Seagraves v. Austin Co. of Greensboro,123 N.C. App. 228,472 S.E. 2d 397 (1996). In this case defendants failed to sustain their burden of proof and therefore plaintiff's termination was not for misconduct or fault unrelated to his compensable injury for which a non-disabled employee would ordinarily have been terminated by defendant-employer. Id.
7. Plaintiff is entitled to all medical expenses incurred or to be incurred as a result of his compensable injury, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or tend to lessen plaintiff's period of disability. N.C. Gen. Stat. §§ 97-2(19); 97-25.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to the attorney's fee approved below, defendants shall pay plaintiff total disability compensation at a rate of $423.21 per week from May 16, 2006 through May 30, 2006. This compensation has accrued and shall be paid in a lump sum.
2. Defendants shall pay all related medical expenses incurred or to be incurred by plaintiff as the result of his injury by accident, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or tend to lessen plaintiff's period of disability. *Page 10 
3. A reasonable attorney fee of 25% of the compensation due plaintiff under paragraph 1 of this Award is approved for plaintiff's counsel and shall be paid directly to plaintiff's counsel.
4. Defendants shall pay the costs.
This 4th day of March, 2008.
S/
 LAURA KRANIFELD MAVRETIC
 COMMISSIONER
CONCURRING:
S/
 BERNADINE S. BALLANCE
 COMMISSIONER
S/
 CHRISTOPHER SCOTT
 COMMISSIONER *Page 1